UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Winthrop Resources Corporation, Civil File No. 01-551(PAM/SRN)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

North American Lighting, Inc.,

Defendant.

---

This action involves a dispute between Plaintiff lessor and Defendant lessee concerning the date on which a lease for certain computer equipment was terminated. Plaintiff contends that Defendant's notice of termination was untimely and that the lease continued in force until May 31, 2001. Defendant argues that its notice of termination was timely and that the lease therefore expired on June 30, 2000. This matter is before the Court on Plaintiff's Motion for Summary Judgment. For the following reasons, the Court grants Plaintiff's Motion but limits Plaintiff's recovery to five months' worth of lease charges, sales taxes, late charges, and property taxes as well as reasonable costs and attorneys' fees.

**BACKGROUND**

Plaintiff Winthrop Resources Corporation ("Winthrop") is a Minnesota corporation that leases computer and other electronic equipment. Defendant North American Lighting, Inc. ("NAL") is a Michigan Corporation with its principal place of business in Illinois. In

FEB 13 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD FEB 13 2002
DEPUTY CLERK

1993, Winthrop and NAL entered into a lease agreement ("Agreement") whereby Winthrop was to lease to NAL certain computer equipment. The Agreement provided that specific items of leased equipment would be identified on lease schedules which would then be incorporated into the Agreement. These lease schedules would also contain the lease term and charges for the specific equipment listed in them.

Between 1993 and 1994, NAL entered into ten lease schedules with Winthrop. After all of the items of computer equipment on a lease schedule were installed by Winthrop and accepted by NAL, NAL would execute a certificate of acceptance for those particular items of equipment.

This case involves the eleventh lease schedule entered into by the parties on May 16, 1997. This eleventh lease schedule, Lease Schedule No. 011, provided for an initial lease term of 36 months and a monthly lease charge of approximately $9,000.00. (See Gendler Aff. Ex. 4.) Among other things, Lease Schedule No. 011 indicated that nine copies of certain media software, nine CD-ROM drives, and nine internal disc drives were being leased to NAL. On May 21, 1997, NAL executed a certificate of acceptance acknowledging that the specific items of computer equipment had been installed by Winthrop and accepted by NAL. (See id. Ex. 5.) This certificate of acceptance, however, only listed one copy of the media software, one CD-ROM drive, and one internal disc drive.

Lease Schedule No. 011 specifically provided that "this Lease Schedule will be revised to reflect the exact cost and configuration installed." (Id. Ex. 4.) Ostensibly

complying with this language, Winthrop prepared a revised Lease Schedule No. 011R which was sent to NAL. (See id. Ex. 6.) According to Winthrop, this revised Lease Schedule simply adjusted the quantity of media software, CD-ROM drives, and internal disc drives to match what was actually delivered and installed. NAL executed this revised Schedule on June 19, 1997, but did not send Winthrop a new certificate of acceptance. Winthrop, however, added the letter designation "R" to the certificate of acceptance that NAL had executed for Lease Schedule No. 011. Winthrop claims that adding a letter designation in this manner was its standard practice and that, in fact, Winthrop had done this very thing once before during its relationship with NAL.

A rider to Lease Schedule Nos. 011 and 011R provided that after the initial lease term of 36 months expired, the lease would continue "for successive one-hundred twenty (120) day periods thereafter until terminated." (See id. Ex. 4.) This rider went on to say that the lease could be terminated "at the end of the Initial Term or any one-hundred twenty (120) days thereafter by either party mailing written notice of its termination to the other party not less than one-hundred twenty (120) days prior to such termination." (Id.)

The dispute in this case hinges on whether NAL timely terminated Lease Schedule No. 011R by a letter sent to Winthrop on February 17, 2000. (Gendler Aff. Ex. 7 (Feb. 17, 2000, letter from Roger Eaton to Lora Hicks).) Winthrop contends that this termination was untimely because, according to Winthrop, the commencement date for Lease Schedule No. 011R was June 1, 1997. In order to terminate Lease Schedule No. 011R, Winthrop argues

that NAL would have had to send the termination letter by February 2, 2000. NAL, on the other hand, contends that the commencement date for Lease Schedule No. 011R was July 1, 1997, at the earliest. Accordingly, NAL argues that its termination request on February 17, 2000, was timely.

Winthrop justifies its argument that the commencement date for Lease Schedule No. 011R was June 1, 1997, by pointing out that the Agreement defines the commencement date for any lease as the first of the month following the installation date of all the equipment in a lease schedule. The installation date is then defined as the date on which the items of equipment are installed at the location of installation, ready for use, and declared acceptable for maintenance by the maintenance vendor. Because the certificate of acceptance executed by NAL on May 21, 1997, specifically states that the installation date for the items of equipment listed in Lease Schedule No. 011R (which lists the same items as those listed in Lease Schedule No. 011 minus eight copies of the Media software, eight external CD-ROM drives, and eight internal disk drives) was May 21, 1997, Winthrop contends that the commencement date must be June 1, 1997. In other words, Winthrop argues that the certificate of acceptance executed by NAL on May 21, 1997, establishes that there was simply a different quantity of media software, CD-ROM drives, and internal disc drives delivered to and installed at NAL's place of business in May 1997. In all other ways, Lease Schedule No. 011 and No. 011R are identical. Accordingly, Winthrop argues that the installation date listed in NAL's certificate of acceptance is controlling as to the equipment

installed pursuant to Lease Schedule Nos. 011/011R.

NAL argues, on the other hand, that the difference between the equipment listed in Lease Schedule No. 011 and No. 011R reflects the fact that the items of equipment at issue were substantially modified and reconfigured. According to Kirk Gadberry, NAL's General Manager of Finance and Accounting, "[a]ll of the items [in] Lease Schedule 011 were installed at NAL's facility." (Gadberry Decl. at ¶ 9.) Gadberry then claims that "[a]ll of the equipment and other products listed [in] Lease Schedule 011R was [sic] installed at NAL's facility in June of 1997." (Id. at ¶ 11.) NAL contends that its certificate of acceptance for Lease Schedule No. 011 could not, and did not, mean that it had accepted the equipment listed in Lease Schedule No. 011R.

In any event, Winthrop acknowledged NAL's termination request on March 1, 2000, but asserted that the termination request was ineffective for June 1, 2000. (See Gendler Aff. Ex. 8 (Mar. 1, 2000, letter from Dean Stinchfield to Roger Eaton).) Accordingly, Winthrop informed NAL that "[a]s per the lease terms for this schedule, the last day of charge for this schedule will be September 30, 2000." (Id.) NAL did not make its monthly payment for May and has not made any lease payments since that date. On May 12, 2000, Winthrop advised NAL that it was in default under the Agreement and Lease Schedule No. 011R. (See Gendler Aff. Ex. 9 (May 12, 2000, letter from Paul Gendler to Mike Oberly).) Accordingly, Winthrop accelerated the lease payments and informed NAL that it was going to repossess the equipment. (Id.) After a series of letters by both parties debating whether Winthrop

needed to pick up the equipment or provide NAL with detailed instructions for the return shipment of the equipment, NAL returned the equipment to Winthrop on May 17, 2001.

On February 26, 2001, Winthrop brought this action against NAL, seeking payment for 13 months' worth of lease charges, sales tax, late charges, property tax and costs, including attorneys' fees, pursuant to the Agreement.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is only proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### B. Merits

In its rather sprawling memorandum opposing summary judgment, NAL argues that summary judgment is inappropriate because there are several genuine issues material fact regarding the commencement date for Lease Schedule No. 011R.

As an initial matter, NAL makes much of the fact that the letter "R" was appended to the certificate of acceptance sent by NAL to Winthrop on May 21, 1997. In essence, NAL argues that the "R" was improperly added to the certificate and that its addition raises factual questions about the authenticity of the certificate. The Court disagrees. The certificate's authenticity is not at issue. NAL does not dispute that it sent the certificate for Lease Schedule No. 011, and Winthrop admits that it added the letter "R" to the certificate.

NAL's second argument is that a dispute over the installation date for the equipment automatically raises an issue of fact. NAL points to a single case to support this argument, New Balance Athletic Shoe, Inc. v. Winthrop Res. Corp., No. 98-CV-12612RWZ (D. Mass. Jan. 6, 2000). In New Balance, however, the court simply found that there was a material factual dispute because the date of installation in the certificate of acceptance differed from the date on which New Balance executed the certificate. Here, the certificate of acceptance at issue was executed on the same date on which it states that the equipment was installed. Accordingly, New Balance is inapposite.

NAL's third, and only potentially meritorious, argument is that the equipment in

Lease Schedule No. 011 was delivered and then modified or reconfigured. In other words, NAL contends that "the documents reflect that eight (8) units of Media software, eight (8) external drives, and eight (8) internal drives were removed from NAL's facility and returned to Winthrop." (Def.'s Opp'n Mem. at 9.) To support this argument, NAL relies on Gadberry's declaration (1) that all of the items listed in Lease Schedule No. 011 were installed at NAL's facility but (2) that all of the items listed in Lease Schedule No. 011R were installed in June 1997.

The plain text of the documents provided to the Court, however, show that on May 21, 1997, NAL executed a certificate of acceptance for, among other things, one copy of the Media software, one external CD-ROM drive, and one internal disk drive. If more than one of the Media software, external CD-ROM drives, and internal disk drives was actually delivered and installed in May but returned in June, then NAL should not have signed a certificate of acceptance indicating the contrary. Despite NAL's deft attempts to obfuscate the facts in this case, the Court is persuaded that the items of equipment listed in Lease Schedule No. 011, minus 8 copies of the media software, 8 CD-ROM drives, and 8 internal disc drives, match exactly the items of equipment listed in the certificate of acceptance executed by NAL on May 21, 1997, which in turn match exactly the items of equipment listed in Lease Schedule 011R. In the absence of any corroborating testimony or documentary evidence, Gadberry's ambiguous declaration is insufficient to create a genuine issue of material fact over the installation date in this case.

Accordingly, the Court finds that the installation date for the equipment listed in Lease Schedule No. 011R was May 21, 1997, and that the commencement date for Lease Schedule No. 011R was June 1, 1997. NAL's February 17, 2000, notice of termination was, therefore, untimely and Winthrop is entitled to summary judgment in its favor.

### C. Extent of Liability

Although NAL's February 17, 2000, notice of termination did not end the lease as of June, 2000, NAL is only liable for five months' worth of charges. According to the terms for Lease Schedule No. 011R, NAL's notice of termination was effective as of September 30, 2000. Winthrop, in fact, confirmed this reading of the lease terms in a letter dated March 1, 2000, where it stated that "[a]s per the lease terms for this schedule, the last day of charge for this schedule will be September 30, 2000." (Gadberry Decl. Ex. G (Mar. 1, 2000, letter from Dean Sinchfield to Roger Eaton).) An internal Winthrop document also states that sufficient notice of NAL's termination was received for a September 30, 2000, termination of Lease Schedule No. 011R. (See Wagener Aff. Ex. 4.)

Winthrop argues that because the equipment listed in Lease Schedule No. 011R was not returned to Winthrop until May 17, 2001, NAL should be held liable for lease charges until that date. NAL counters by arguing that based on the express terms of Winthrop's March 1, 2000, letter, which represented that "return instructions will be sent to [NAL's] attention in respect to this schedule at the appropriate time," (Gadberry Decl. Ex. G), Winthrop was required to send return instructions to NAL. Additionally, the Agreement

provides that NAL needed to return the equipment "at the time designated in writing by the Lessor." (See Gendler Aff. Ex. 1 at ¶ 7.)

At the very least, then, Winthrop was required by the terms of the Agreement to designate in writing a time for the return of the equipment. Winthrop failed to do this. Accordingly, Winthrop should not receive the windfall of payment for an additional eight months of lease charges.

### D. Attorneys' Fees

Paragraph 19 of the Agreement requires NAL to pay "reasonable costs of collection or other out-of-pocket costs and expenses and attorneys' fees, if Winthrop is forced to bring suit as a result of [NAL's] breach of the lease documents." (Gendler Aff. Ex. 1 at ¶ 19.) Because Winthrop was forced to instigate the instant action to recover lease charges owed to it under the Agreement, Winthrop is entitled to recover its reasonable costs and attorneys' fees.

## CONCLUSION

NAL has failed to raise any genuine issues of material fact regarding the commencement date for Lease Schedule No. 011R. Nevertheless, pursuant to the terms of the Agreement and Winthrop's letter to NAL, NAL is only liable for five months' worth of lease charges, sales taxes, property taxes, and late fees as well as reasonable costs and attorneys' fees. Accordingly, for the foregoing reasons, and upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary

Judgment (Clerk Doc. No. 12) is **GRANTED** as follows:

1. Plaintiff is entitled to recover past due lease charges and sales taxes for five months (May 2000 through September 2000) at $9,689.46 per month, totaling $48,447.30;
2. Plaintiff is entitled to recover late charges of $10,910.64;
3. Plaintiff is entitled to recover a proportionate amount of property taxes to be calculated and submitted to the Court for approval within thirty (30) days of the date of this Order; and
4. Upon proper Motion, Plaintiff is entitled to recover its reasonable costs and attorneys' fees.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: Feb. 12, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov